IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JED PHILIP LARSON, Sr.          §
(#29199-112),                   §
                                §
          Plaintiff,            §
                                §
V.                              §          No. 3:15-cv-1012-N-BN
                                §
EDDY M. MEJIA,                  §
                                §
          Defendant.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for initial screening pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should summarily dismiss Plaintiff Jed Philip Larson, Sr.'s complaint [Dkt. No. 3] with prejudice.

**Background**

On April 1, 2015, Plaintiff, an inmate at FCI Seagoville, submitted a Petition to File *Bivens* Suit pursuant to 28 U.S.C. § 1331 (the "Complaint"), naming FCI Seagoville Warden Eddy M. Mejia as a defendant. *See* Dkt. No. 3 at 1. Plaintiff was convicted in the United States District Court for the Central District of California of one count of Production of Child Pornography under 18 U.S.C.A. § 2251(a) and was sentenced to twenty-five years on November 20, 2006. *See id.* at 3. Plaintiff alleges that

Defendant violated: (1) the Administrative Procedures Act ("APA"); (2) the Due Process Clause; and (3) the Equal Protection Clause when Defendant banned Plaintiff's Trust Fund Limited Inmate Computer Systems ("TRULINCS") electronic communication access. *See id.* at 5-6.

Plaintiff asserts that, while previously incarcerated at FCI Marianna, he was allowed TRULINCS email access for three years; that he obeyed all Bureau of Prisons ("BOP") rules; and that he was never disciplined. *See id.* at 5. But, Plaintiff alleges, after Plaintiff was transferred to FCI Seagoville, he is no longer allowed TRULINCS access. *See id.* Plaintiff asserts that the change in his TRULINCS usage status is the result of a "deliberate misinterpretation" of his presentence report ("PSR") and that the "misinterpretation is not supported by the facts of [his] case or the offense of which [he] was convicted." *See id.* Plaintiff finally alleges that "other similarly situated" inmates at Seagoville are allowed unrestricted TRULINCS access. *See id.* at 6.

Plaintiff requests "[r]estoration of [his] TRULINCS/email privileges [a]nd punitive damages of $1,000 per month for each month since they were unlawfully revoked in August 2012." *See id.* at 7.

### Legal Standards

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), established "a damage remedy against individual federal law enforcement officers who allegedly conducted a warrantless search of a suspect's home and arrested him without probable cause." *De La Paz v. Coy*, 786 F.3d 367, 372 (5th Cir. 2015). *Bivens* held that "the victims of a constitutional violation by a federal agent have a

right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Id.* (internal quotation marks omitted).

A district court is required to screen a civil action brought by a prisoner – whether he is incarcerated or, instead, detained prior to trial – seeking relief from a governmental entity or employee. *See* 28 U.S.C. §§ 1915A(a), (c). On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b).

Plaintiff's payment of the $400 filing fee in this action does not relieve the Court of its screening obligation. *See, e.g.*, *Thompson v. Hayes*, 542 F. App'x 420, 420-21 (5th Cir. 2013) (per curiam) ("[U]nder 28 U.S.C. § 1915A(b)(1), the district court is required to review any civil complaints in which a prisoner seeks relief against a government entity, officer, or employee regardless of whether the prisoner has paid the filing fee." (citing *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998))).

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). And a complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory,

including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiff must allege more than labels and conclusions, and, while the Court must accept all of Plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory

statements will not suffice. *See id.* But to survive dismissal under *Twombly* and *Iqbal*, Plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

## Analysis

TRULINCS Overview

The BOP Program Statement 5265.13 dictates the TRULINCS electronic messaging policy and procedures. *See Green v. Maye*, No. A-12-CA-065 LY, 2012 WL 1982249, at *1 (W.D. Tex. June 1, 2012). TRULINCS allows inmates to email with family and friends who are listed on the inmate's electronic contact list. *See* Federal Bureau of Prisons, Inmates Communications – Email, www.bop.gov/inmates/communications.jsp (last visited October 21, 2015). TRULINCS email access is subject to individual inmate approval, and each proposed contact must give their permission to communicate with the inmate. *See id.* BOP officials regulate inmates' TRULINCS usage, and inmates are not allowed to access the internet. *See id.* Also, before communicating electronically via TRULINCS, both inmates and their contacts must consent to being monitored. *See id.* And "all messages are screened for content that could jeopardize the public or the safety, security, or orderly operation of the facility." *Id.* "Program Statement 5265.13 states that the use of TRULINCS is a privilege and that the BOP has absolute discretion in determining whether to limit or deny the use of TRULINCS by an inmate." *Green*, 2012 WL 1982245, at *1 (citing

Program Statement 5265.13(2)). "When the BOP determines that an inmate's use of the electronic messaging system would threaten the safety or security of the public or a prison facility or interfere with the orderly operation of the prison facility, the inmate will not be permitted to use TRULINCS." *Id.* (citing Program Statement 5265.13(2)).

Administrative Procedures Act ("APA")

Plaintiff's claim alleging that Defendant's application of Program Statement 5265.13 was "arbitrary and capricious" and thus in violation of the APA should be dismissed with prejudice.

The BOP's Program Statement asserts that "[u]se of the TRULINCS is a privilege; therefore, the <u>Warden</u> or an authorized representative may limit or deny the privilege of a particular inmate." *Gatch v. Walton*, No. 13-cv-1168-MJR, 2013 WL 6405831, at *2 (S.D. Ill. Dec. 6, 2013) (quoting Program Statement 5265.13, §2, p. 2) (emphasis added). And inmates may not be excluded from TRULINCS access because of broad and general categorizations of their criminal record. *See id.* (quoting P5265.13, §3a, p. 3). Instead, denying an inmate TRULINCS access must be based on that inmate's personal history or behavior. *See id.* The BOP states that examples of criminal history that would justify exclusion include "soliciting minors for sexual activity, or possession/distribution of child pornography through the Internet or other means," or "using computers/email/Internet or other communication methods as a conduit for committing illegal activities." *Id.* (quoting Program Statement 5265.13, §3a, p. 3). The BOP's authority to implement TRULINCS is found in 18 U.S.C.A. § 4042(a). *See Green,* 2012 WL 1982249, at *3. Section 4042(a)(1)-(2) mandates that "[t]he Bureau

of Prisons, under the direction of the Attorney General, shall – (1) have charge of the management and regulation of all Federal penal and correctional institutions; [and] (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." Courts are deferential to Program Statements, and Program Statements are upheld unless they are inconsistent with the clear language of the statute. *See Solan v. Zickefoose*, 530 F. App'x 109, 112 (3d Cir. 2013) (per curiam). And the APA holds that "courts may not review agency action when '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Hammonds v. Fed. Bureau of Prisons*, No. 4:11-cv-578-Y, 2012 WL 759886, at *2 (N.D. Tex. Mar. 7, 2012) (quoting 5 U.S.C.A. § 701(a)(1) and (2)).

Also, "an APA claim must be dismissed in those rare instances where, statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* (quoting *Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998)). "Review is not available under § 701(a)(2) of the APA, 'if the statute is drawn so that a court would have no meaningful standard against which to judge that agency's exercise of discretion.'" *Id.* (quoting *Ellison*, 153 F.3d at 251).

Because "Section 4042(a) addresses only the general responsibilities of the BOP, 'the absence of specific guidelines of appropriate conduct by BOP officials in administering these duties ... leaves judgment or choice to BOP officials.'" *Green*, 2012 WL 1982249, at *3 (quoting *Scrima v. Hasty*, No. 97 CIV. 8433(JGK), 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998)). The lack of specific guidelines thus confirms that the

BOP has broad discretion in regulating its prisons. *See Green*, 2012 WL 1982249, at \*3; *see also Crooker v. Morris*, Civ. A. No. 95-2820 (JEI), 1996 WL 608553, at \*6 (D.N.J. Oct. 17, 1996) ("It is well-settled that the BOP generally has wide discretion to implement the ... provisions in § 4042(a))."

In fact, due to the deference given to the BOP under 18 U.S.C.A. § 4042(a), courts – including another judge of this Court – have held that Program Statement 5265.13 is unreviewable. *See Hammonds,* 2012 WL 759886, at \*2; *Green*, 2012 WL 1982249, at \*3-\*4; *Solan*, 530 F. App'x at 112 ("Program Statements are internal agency guidelines, rather than published regulations subject to the rigors of the Administrative Procedure Act." (internal quotations omitted)). For example, in *Hammonds*, the plaintiff, convicted of Coercion and Enticement of a Minor to Engage in Sexual Activity, challenged the BOP and the warden of FCI Fort Worth under the APA for denying him TRULINCS email access. *See* 2012 WL 759886, at \*1-\*2. And now Senior United States District Judge Terry R. Means, in screening the complaint under 28 U.S.C. § 1915A, held that the court lacked subject matter jurisdiction, because "the APA precludes judicial review where, as here, the BOP has broad discretion to provide suitable quarters and care for inmates, which would include the provision of electronic messaging services." 2012 WL 759886, at \*1-\*2; *see also Green*, 2012 WL 1982249, at \*1-\*3 (denying a 28 U.S.C. § 2241 petition for a writ of habeas corpus, alleging that the BOP improperly denied the petitioner TRULINCS email access under the APA, holding, "[t]o the extent that Green attacks Program Statement 5265.13 as "arbitrary and capricious," as an interpretive rule, Program Statement 5265.13 is unreviewable

-8-

by the Court as it falls within the BOP's broad discretionary powers to administer prisons").

Alternatively, courts have considered the deference owed to the BOP under Policy Statement 5265.13 in relation to the plaintiff's personal history. *See Gatch,* 2013 WL 6405831, at *2. For example, in *Gatch*, the court screened the plaintiff's complaint under 28 U.S.C. § 1915A and held that the FCI's "denial of plaintiff's request to participate in TRULINCS was not arbitrary or capricious, but was based on both [Policy Statement 5265.13] and plaintiff's own personal history of attempting to entice and/or solicit a minor, by exchanging sexually explicit pictures of his penis and by arranging a meeting over the internet." 2013 WL 6405831, at *1-*2 (internal quotations omitted).

Additionally, Plaintiff emphasizes that he was initially permitted to use TRULINCS electronic messaging while at FCI Marianna; then, upon transfer to FCI Seagoville, was then denied TRULINCS email access. *See* Dkt. No. 3 at 5. But, as the court's ruling in *Dunlea v. Federal Bureau of Prisons*, No. 3:10-cv-214 (CFD), 2010 WL 1727838 (D. Conn. Apr. 26, 2010), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010), makes clear, a change in TRULINCS status does not diminish the deference given to BOP officials. *See* 2010 WL 1727838, at *1. In *Dunlea*, the plaintiff was initially permitted to use TRULINCS for electronic messaging, but, roughly three months later, her email privileges were revoked. *See id.* There, the court denied the plaintiff's petition for a writ of habeas corpus, because the use of TRULINCS email is a privilege and BOP officials had the discretion deny the

plaintiff's TRULINCS access based on her conviction of credit card fraud and bank embezzlement. *See id.* at *2, *4.

This Court should dismiss Plaintiff's APA claim for lack of jurisdiction. But, even if the Court determines that it does have jurisdiction, the Court should nevertheless summarily dismiss the APA claim. Denying Plaintiff TRULINCS email access is not "arbitrary and capricious" considering Plaintiff's conviction of Production of Child Pornography in light of the deference owed to the BOP under Program Statement 5265.13, which permits Defendant to withhold Plaintiff's TRULINCS email privileges. *See* Dkt. No. 3 at 3, 5.

<u>Due Process</u>

Plaintiff's claim alleging Defendant denied him due process by refusing to grant TRULINCS access should also be denied with prejudice.

In *Sandin v. Connor*, 515 U.S. 472 (1995), the United States Supreme Court held that a plaintiff's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. And the United States Court of Appeals for the Fifth Circuit has recognized that, "[a]fter *Sandin*, it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status." *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (citation omitted).

Furthermore, multiple courts have held "that the benefits made available to prisoners under the TRULINCS system, including the use of e-mail correspondence,

are merely ... institutional privileges, not constitutionally protected rights, which can be limited at the discretion of the warden." *Stratton v. Speanek*, No. 14-cv-120-HRW, 2014 WL 6705394, at *3 (E.D. Ky. Nov. 26, 2014); *see also Solan*, 530 F. App'x at 111; *Gatch*, 2013 WL 6405831, at *3; *Hoffman v. Fed. Bureau of Prisons*, No. 13-cv-852-GPM, 2013 WL 5529612, at *4 (S.D. Ill. Oct. 7, 2013); *Green*, 2012 WL 1982249, at *3-*4; *Jones v. Daniels*, No. 10-88-GFVT, 2010 WL 2228355, at *11 (E.D. Ky. June 2, 2010); *Parisi v. Lappin*, No. 10-40030, 2011 WL 1045016, at *2-*3 (D. Mass. Mar. 18, 2011); *Dunlea*, 2010 WL 1727838, at *2.

For example, in *Green*, the court recognized that "[p]risoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest." 2012 WL 1982249, at *2 (citing *Sandin*). And the court held that "[a] prisoner does not have a constitutionally protected liberty interest in using TRULINCS, as its use does not affect the duration of one's sentence and is a privilege." *Id.* The court therefore rejected the plaintiff's allegation that his due process rights were violated when plaintiff was denied TRULINCS email access. *Id.* As in *Green*, Plaintiff does not have a constitutionally protected liberty interest in TRULINCS email usage, and TRULINCS can be regulated at the discretion of Defendant. Thus, Plaintiff's due process claim fails on its merits and must be dismissed with prejudice.

Equal Protection

Plaintiff's equal protection claim should be dismissed with prejudice.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *QUTB v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). But "a plaintiff must allege an improper motive, and not merely a discriminatory impact." *Green,* 2012 WL 1982249, at \*2 (citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)). And, "while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause ... must [] be analyzed in light of the special security and management concerns in the prison system." *Morrison v. Garraghty*, 239 F.3d 648, 655 (5th Cir. 2001).

For example, in *Brown v. Dretke*, 184 F. App'x 384 (5th Cir. 2006), the Fifth Circuit held that the prisoner "failed to state a cognizable equal-protection claim because he did not show that sex offenders are a suspect class <u>or</u> that they have been denied a fundamental right ... [and] subjecting such offenders to different parole procedures is reasonably related to legitimate penological interests." *Id.* at 385 (emphasis added).

In *Green*, the plaintiff alleged a violation of the equal protection clause when he was denied TRULINCS email access after ordering a book about computer hacking while inmates with convictions related to sex-crimes and computers were allowed to use TRULINCS. 2012 WL 1982249, at \*2. The court dismissed the plaintiff's equal protection claim, holding (1) that he "failed to plead that he [was] a member of a suspect class or to identify an improperly discriminatory motive" and (2) that he "failed

-12-

to show a lack of rational basis for the difference in treatment between him and other inmates." *Id.* at *3.

In *Gatch*, an inmate was convicted of Attempted Enticement of a Person Under the Age of 18 to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. 2422(b). 2013 WL 6405831, at *1. The inmate alleged that the warden denied him equal protection because other inmates with "similar offense conduct" were permitted to use TRULINCS. *Id.* The court, upon screening the plaintiff's complaint pursuant to 28 U.S.C. § 1915A, dismissed the claim with prejudice because the plaintiff did "not point to any specific examples of other prisoners who have a history of attempting to exchange sexually explicit photographs with minors over the internet, or attempting to arrange a meeting with a minor for illicit activity, yet have been allowed to use TRULINCS." *Id.* at *1, *3-*4. Additionally, the court recognized that the plaintiff's "complaint [did] not show that he was singled out for different treatment for no rational reason" in light of the deference owed to the BOP in comparing the plaintiff's criminal history to the policy rationale behind Program Statement 5265.13. *Id.* at *3.

In *Hoffman*, the plaintiff was incarcerated for transporting child pornography and stalking, and his complaint implied that he and other sex offenders were denied equal protection because they were denied TRULINCS email access. *See* 2013 WL 5529612, at *1, *4. The court, in screening the complaint pursuant to 28 U.S.C. § 1915A, held that the plaintiff failed to state an equal protection claim for two reasons. *See id.* at *1, *4. First, the court recognized that the plaintiff's own pleading indicated that he was denied TRULINCS access based on his personal history and offense

conduct, not simply because he was convicted of a sex offense. *See id.* at *4. Second, the court held that the plaintiff's pleading did not suggest that he was denied TRULINCS access for no rational reason and explained that a "plaintiff alleging [a] class-of-one equal protection claim must plead that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). As a result, the court dismissed the plaintiff's claim with prejudice. *See id.*

As in *Gatch*, here, Plaintiff has not specifically highlighted in his complaint other prisoners who were convicted of Production of Child Pornography under 18 U.S.C. 2251(a) yet granted TRULINCS access. *See* 2013 WL 6405831, at *3; Dkt. No. 3 at 6. Indeed, Plaintiff has alleged only that "other similarly situated inmate[s] [were given] unrestricted TRULINCS email access." Dkt. No. 3 at 6. Additionally, as in *Green* and *Hoffman*, here, Plaintiff's complaint does not indicate that he was singled out for no rational reason in light of Policy Statement 5265.13, which lists "soliciting minors for sexual activity, or possession/distribution of child pornography though the Internet or other means," or "using computers/email/Internet or other communication methods as a conduit for committing illegal activities" as examples of criminal history that could justify a TRULINCS restriction." *Green*, 2012 WL 1982249, at *3; *Hoffman*, 2013 WL 5529612, at *4; P5265.13 § 3A, p. 3; Dkt. No. 3 at 5-6.

Plaintiff's equal protection claim should be dismissed with prejudice.

First Amendment

Finally, while not specifically alleged in his complaint, Defendant's denial of

Plaintiff's TRULINCS email access does not violate Plaintiff's First Amendment rights.

Even though inmates remain entitled to many First Amendment rights throughout incarceration, the Supreme Court has recognized that "[t]he very object of imprisonment is confinement[, and, as a result, m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). An inmate, like Plaintiff, "does not retain rights inconsistent with proper incarceration." *Id.* (citations omitted).

Courts analyzing a prisoner's TRULINCS electronic messaging rights under the First Amendment have applied the Supreme Court's analysis in *Turner v. Safely*, 482 U.S. 78 (1987), when deciding whether the BOP officials' rationale for prohibiting TRULINCS email access "'is reasonably related to legitimate penological interests.'" *Solan,* 530 F. App'x at 110-11 (quoting *Turner*, 482 U.S. at 89); *accord Gatch*, 2013 WL 6405831, at *2. Under *Turner*, courts ask:

> (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation.

*Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

In *Gatch*, the court held that Program Statement 5265.13 "[had] an obvious connection to the interests of protecting the public and maintaining prison security, and plaintiff's past conduct [Attempted Enticement of a Person Under the Age of 18 to Engage in Criminal Sexual Activity] directly relates to the improper use of electronic

-15-

communications." 2013 WL 6405831, at *2. Additionally, the court noted that the plaintiff had other available means of communication, such as sending and receiving mail through the United States Postal Service. *See id.* The court recognized the substantial deference given to prison officials and held that "allowing plaintiff to use TRULINCS would involve the use of prison resources to screen or monitor [plaintiff's] electronic communications in order to ensure that safety and security concerns are not jeopardized." *Id.* As a result, the court held that prohibiting plaintiff from using TRULINCS did not deprive him of his First Amendment rights. *Id.* at 3.

In *Hoffman*, the plaintiff alleged a violation of his First Amendment rights after he was convicted of transporting child pornography and stalking and was therefore denied TRULINCS email access. *See* 2013 WL 5529612, at *1 & *3. The court emphasized that, "[a]lthough letter-writing may not be as efficient means of communication as using the electronic mail service, the Constitution does not require that prison officials chose the least restrictive alternative." *Id.* at *3 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989)).

If Plaintiff were to allege that Defendant violated his First Amendment rights by restricting Plaintiff's TRULINCS access, this Court should adopt the courts' analyses in both *Gatch* and *Hoffman*. Thus, any potential First Amendment claim should be dismissed with prejudice.

## Recommendation

The Court should summarily dismiss Plaintiff's complaint with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 9, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE